# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

CHRISTOPHER SHAND,

        Plaintiff,

v.

CORRECTIONAL OFFICER PARSONS,
ET AL.

        Defendants.

Civil Action No.
3:20-cv-28 (CSH)

**APRIL 27, 2020**

## INITIAL REVIEW ORDER

**HAIGHT, Senior U.S. District Judge:**

Plaintiff Christopher Shand ("Plaintiff") is currently incarcerated at the Cheshire Correctional Institution of the Connecticut Department of Correction ("DOC").[1]  In January 2020, Plaintiff filed a complaint *pro se* pursuant to 42 U.S.C. § 1983 ("section 1983") against Northern Correctional Institution ("Northern") Correction Officers Parsons and Smiley, and Lieutenant Betances in their individual capacities; and against Acting District Administrator Giuliana Mudano in her individual and official capacity (collectively, "Defendants").  Doc. 1 ¶¶ 2–7.[2]

---

[1]  According to DOC's inmate database, on January 7, 2015, Plaintiff received an eight-year sentence for assault in the first degree.  *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (the Court may "take judicial notice of relevant matters of public record").

[2]  Plaintiff has initiated other lawsuits in this Court based on other, unrelated claims.  *See Shand v. Chapdelaine*, No. 19 Civ. 755 (CSH), 2019 WL 2302513, at *5 (D. Conn. May 30, 2019) (initial review order pursuant to 28 U.S.C. § 1915A permitting plaintiff to file an amended complaint based on his allegations that prison officials failed to protect him from violence by his cellmate); *Shand v. Semple*, No. 18 Civ. 10 (KAD), Doc. 8, at 6 (initial review order permitting plaintiff's claims to proceed against prison officials regarding due process violations and the officials' deliberate indifference to plaintiff's serious mental health needs).

Plaintiff contends that Defendants violated his constitutional rights to due process under the Fourteenth Amendment.  *See* Doc. 1 ¶¶ 14–16.  He seeks injunctive relief and damages.  Pursuant to 28 U.S.C. §1915A, the Court now reviews Plaintiff's Complaint to determine whether his section 1983 claims may proceed.

## I.   STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  *See* 28 U.S.C. § 1915A(b)(1)-(2); *Abrams v. Waters*, No. 17 Civ. 1659 (CSH), 2018 WL 2926294, at *3 (D. Conn. June 8, 2018) (same).

A complaint is adequately pled if its allegations, accepted as true and liberally construed, could "conceivably give rise to a viable claim."  *See Green v. Martin*, 224 F. Supp. 3d 154, 160 (D. Conn. 2016) (citing *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005)).  Although highly detailed allegations are not required, the complaint must state a claim that is "plausible on its face."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)); *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017).  A complaint states a claim that is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  However, the court is not bound to accept "conclusory allegations."  *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011).  Nor does a complaint suffice if it tenders "naked assertions" devoid of "further factual enhancement."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

If a plaintiff is proceeding *pro se*, it is well-established that his or her complaint "must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 Fed. Appx. 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (*per curiam*)); *see also Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). Nevertheless, even when reviewing a *pro se* complaint, a court may not "invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d 2010). A *pro se* complaint that contains "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," is not sufficient to state a viable claim. *Id.* (citation and internal quotation marks omitted).

## II.   FACTUAL ALLEGATIONS

The following factual allegations in Plaintiff's Complaint are accepted as true only for purposes of this Order.

On January 6, 2019, Correction Officer Parsons fabricated allegations that Plaintiff had resisted and pulled away while Defendant Parsons tried to remove his handcuffs through a food slot, which resulted in a cuff key breaking. Doc. 1 ¶ 9. Defendant Parsons and Plaintiff have had many "issues" between one another in the past. *Id.* ¶ 10. In retaliation for such past "issues," Parsons issued the false disciplinary report, charging Plaintiff for the offense of interfering with safety and security. *Id.* According to Plaintiff, video footage would reveal that Plaintiff did not engage in any form of resistance or behavior that violated any prison policies in connection with his food slot-related interaction with Defendant Parsons. *Id.* ¶ 11.

Plaintiff was placed in segregation on that same day. *Id.* ¶ 14. He was never served with a disciplinary report on the charges of interfering with safety and security. *Id.* ¶ 15. He requested that Hearing Officer Betances and Investigator Smiley call inmates who had seen or heard the incident on January 6, 2019—for example, inmates who were housed on the same tier as Plaintiff. *Id.* ¶ 16. Although Plaintiff did not know the names of these inmates, he provided their cell locations. *Id.* ¶ 17. He also asked that correction officers who had witnessed the incident be called. *Id.* ¶ 18. However, Investigator Smiley refused to question the inmates and correction officers whom Plaintiff had identified as witnesses. *Id.* ¶ 19.

At the hearing on January 16, 2019, Hearing Officer Betances failed to call any of the witnesses requested by Plaintiff. *Id.* ¶¶ 20–21. Betances stated that he would not call witnesses to a hearing involving segregation inmates; and that the disciplinary report presented a full picture of the incident. *Id.* ¶ 21.

During the hearing, Officer Smiley and Discipline Hearing Officer Betances failed to produce the physical evidence of the broken key which, according to an incident report, had been put in for replacement. *Id.* ¶ 12. This report and, principally, the representation in the report that the broken key was being replaced, was sufficient for finding Plaintiff guilty. *Id.* Plaintiff claims, however, that the allegations regarding Plaintiff were false, and that they were fabricated to retaliate against Plaintiff (which would be confirmed by a security video). *Id.* ¶ 13. Plaintiff further claims that a photograph of the physical evidence was not produced at the hearing. *Id.*

After the hearing, Plaintiff received a written disposition signed by Hearing Officer Betances. *Id.* ¶ 22. The written disposition indicated that Plaintiff was found guilty based on staff statements and documentation submitted, and that he received the sanction of punitive segregation. *Id.* The

4

staff statements alleged that during the incident in question, Plaintiff had pulled his hand back in his cell while the key was still in the restraint, causing the key to break. *Id.* ¶ 23. The staff statements also noted that the key was out for repair and that Plaintiff was served with a disciplinary ticket. *Id.* The staff statements did not provide any facts showing how Parsons got the cuffs and cuff key back or how he took off Plaintiff's cell restraints. *Id.* ¶ 24.

Plaintiff filed an administrative appeal with Acting District Administrator Mudano consistent with the prison administrative procedures. *Id.* ¶ 25. He complained that his requested witnesses had not been called; that no evidence supported the offense of interfering with safety or security; that there was no photo of the broken key; and that the written disposition did not explain the reason for the finding of guilt. *Id.* Defendant Mudano denied Plaintiff's appeal. *Id.* ¶ 26.

### III.   DISCUSSION

The Court construes Plaintiff's Complaint as alleging a violation of his Fourteenth Amendment due process rights based on Parsons' preparation of a disciplinary report containing false allegations and the subsequent hearing finding Plaintiff guilty of the allegedly false charges. *See id.* ¶ 1 ("Plaintiff brings his action pursuant to 42 U.S.C. § 1983 . . . because of the violation of [the] Due Process Clause of the Fourteenth Amendment.").[3] According to Plaintiff, Parsons fabricated allegations that Plaintiff had resisted and pulled away while Parsons tried to remove his

---

[3] "Section 1983 does not itself confer substantive rights on a plaintiff, but is instead the means by which an injured party may seek vindication." *Youngs v. Fusaro*, 179 F. Supp. 3d 198, 204 (D. Conn. 2016). The statute provides, in relevant part: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

handcuffs through a food slot, which resulted in a cuff key breaking. *Id.* As a result of those fabricated allegations, Plaintiff was placed in segregation. *Id.* ¶ 14.

Falsely accusing an inmate of misconduct does not itself violate the Constitution. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). In fact, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Id.* (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)).

There are, however, "two exceptions to this rule: when an inmate is "able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right." *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (citation and internal quotation marks omitted); *Velez v. Burge*, 483 F. App'x 626, 628 (2d Cir. 2012) ("[An] inmate must show something more, such as that he was deprived of due process during the resulting disciplinary hearing, or that the misbehavior report was filed in retaliation for the inmate's exercise of his constitutional rights."); *Jackson v. Dzurenda*, No. 11 Civ. 1668 (RNC), 2012 WL 5448330, at *2 (D. Conn. Nov. 7, 2012) ("An inmate's protection against false accusations lies in the procedural due process requirements to be applied by prison officials who conduct the disciplinary hearing." (citation omitted)).

In summary, Plaintiff's claim that Parsons fabricated accusations in a disciplinary report cannot, in and of itself, form the basis of a viable section 1983 claim. But, Plaintiff's claim against Defendants can proceed if Plaintiff has sufficiently alleged one of the two exceptions discussed *supra*: (1) that Defendants did not afford Plaintiff adequate process in the disciplinary hearing that *followed* the report; or (2) if Parsons issued the allegedly-false report, in the first instance, in

retaliation for Plaintiff's exercise of a constitutionally protected right.  The Court will address each exception in order.

### A.    Lack of Procedural Due Process

Plaintiff claims that following Parsons' issuance of a false disciplinary report, his procedural due process rights were violated as a result of his placement in administrative segregation without a fair hearing.  Doc. 1 ¶ 14.  In particular, Plaintiff alleges, *inter alia*, that: (1) Investigator Smiley refused to question witnesses regarding the allegations against Plaintiff, *id.* ¶ 19; (2) Hearing Officer Betances failed to call any witnesses at the hearing, *id.* ¶¶ 20–21; (3) Investigator Smiley and Discipline Hearing Officer Betances failed to produce the physical evidence requested by Plaintiff at his hearing, *id.* ¶ 12; and (4) Plaintiff failed to receive a procedurally adequate written disposition—namely, it did not explain the factual basis underlying the conclusion that Plaintiff was guilty, *id.* ¶¶ 24, 26.

The standard analysis for a procedural due process claim "proceeds in two steps: a court first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

In the prison context, which involves persons whose liberty interests have already been severely restricted because of their confinement in a prison, a prisoner plaintiff cannot show a cognizable deprivation of "liberty" unless he can show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  The Second Circuit has also explained that courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Davis v. Barrett*,

576 F.3d 129, 133–34 (2d Cir. 2009) (*per curiam*); *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

In *Sandin*, the prisoner brought a section 1983 action against several prison officials alleging that they had violated his constitutional right to procedural due process by sentencing him to disciplinary segregation without permitting him to call certain witnesses. *See Sandin*, 515 U.S. at 476. The Supreme Court rejected the contention that any action taken by correctional officials as a punitive measure necessarily encroaches upon a liberty interest protected under the Due Process Clause. *See id*. at 484. Moreover, as to time limits for disciplinary confinement, the Supreme Court held that a prisoner who was subjected to a disciplinary term of thirty days of confinement in restrictive housing did not sustain a deprivation of a liberty interest in violation of the Fourteenth Amendment's Due Process Clause. *See id*. Given the prisoner's indeterminate sentence of 30 years to life, his confinement in disciplinary segregation for 30 days "did not exceed similar, but totally discretionary confinement in either duration or degree of restriction." *Id*. at 486. The Supreme Court concluded that such confinement did not constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" inasmuch as "[t]he regime to which [the prisoner] was subjected . . . was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id*. at 484, 486–87.

With *Sandin's* guidance in mind, I have previously addressed whether prisoners have alleged a cognizable deprivation of "liberty"—that is, whether they have plausibly alleged that they experienced an "atypical and significant hardship." Toward one end of the spectrum, I explained that:

> [The plaintiff's] twenty-day confinement in segregation, falling well short of thirty days, does not, in and of itself, constitute a sufficient deprivation of liberty subject to due process protection. This twenty-day restriction imposes no "atypical and significant hardship" in relation to the fifty-one (51) year term of imprisonment to which [the plaintiff] was sentenced for attempted murder, assault, and criminal possession of a firearm.

*Abrams*, 2018 WL 691717, at \*12.

On the other hand, where a plaintiff alleged that he was placed in administrative segregation for a much longer period of time, I recently ruled in an initial review order that:

> Plaintiff's Complaint shows that he was committed to Administrative Segregation for more than 101 days. "Such a period of segregated confinement would ordinarily preclude dismissing a claim without fact-finding." [*Ellerbe v. Jason*, No. 12 Civ. 580 (MPS), 2015 WL 1064739, at \*5 (D. Conn. Mar. 11, 2015).] Plaintiff may therefore meet the first *Sandin* requirement of a deprivation of a liberty interest imposing an atypical and significant hardship; and, further fact-finding is needed.

*Campbell v. Lantz*, No. 19 Civ. 1512 (CSH), 2019 WL 6771417, at \*8 (D. Conn. Dec. 12, 2019).

Turning to the case at bar, Plaintiff has alleged that he was placed in punitive segregation as a result of the hearing determination finding him guilty, and that he failed to receive adequate procedural protections in connection with his disciplinary hearing. However, he has not alleged facts indicating that the punitive segregation imposed a significant hardship on him in relation to the ordinary incidents of prison life. Plaintiff's allegations provide no indication of either the duration of his punitive segregation or how the conditions of his punitive segregation differed from the general population or other restrictive statuses. In the absence of such allegations, Plaintiff has failed

to allege that he was deprived of a liberty interest due to "atypical and significant hardship" imposed

by his punitive segregation conditions of confinement.  *See Palmer*, 364 F.3d at 64.[4]

Because Plaintiff's Complaint does not show a cognizable deprivation of "liberty," Plaintiff

has not sufficiently alleged a procedural due process claim.  That is the case, regardless of the

allegedly-inadequate process that Plaintiff received in connection with his disciplinary hearing—for

example, prison officials' failure to call witnesses, produce physical evidence, or provide Plaintiff

with an adequate written disposition.  *See supra* Section II.[5]

However, the Court will permit Plaintiff to file an amended complaint to replead his due

process claim to include allegations describing the duration of his punitive segregation and how the

---

[4] This conclusion is unaffected by this Court's ruling, in a separate lawsuit that Plaintiff filed against prison officials, that Plaintiff plausibly alleged a deprivation of a protected liberty interest. In an initial review order in *Shand*, No. 18 Civ. 10 (KAD), Doc. 8, Judge Hall (who presided over the case before it was reassigned to Judge Dooley) concluded that, "Shand alleges that he has been in Administrative Segregation at Northern since January 2015, and held in isolation for most of that time.  He describes many restrictive conditions that were imposed on him for much of the three years. . . . The court concludes that these allegations are more than sufficient to allege a protected liberty interest."  *Id.* at 9.  In the case at bar, Plaintiff has not alleged that he has been in administrative segregation for years, or that he has experienced comparable restrictive conditions.

[5] If the Court had found that a protected interest existed, it would have considered whether the inmate received process that was constitutionally due.  That analysis often depends on context. The procedural protections that are due to a prison inmate facing a disciplinary hearing, for example, are not as expansive as the due process protections for a criminal defendant standing trial.  *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1973); *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004).  Of course, protections are still in place for a disciplinary hearing.  An inmate must be given "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken."  *Sira*, 380 F.3d at 69 (citing *Wolff*, 418 U.S. at 563–67).  Moreover, there must be at least some evidence to support the findings made in the disciplinary hearing.  *See Washington v. Gonyea*, 538 F. App'x 23, 25 (2d Cir. 2013).

conditions of his punitive segregation differ from that of the general population or other restrictive statuses.

**B.     Retaliation**

As the Court noted *supra*, there are two exceptions to the rule than an inmate has no general constitutional right to be free from being falsely accused in a misbehavior report: when an inmate is "able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right." *Willey*, 801 F.3d at 63.  The Court now turns to the second exception.

Plaintiff's allegations suggest that he may be raising a claim of First Amendment retaliation against Correction Officer Parsons.   Plaintiff alleges that Parsons issued the allegedly false disciplinary report to retaliate against him for the many past "issues" between them.  Doc. 1 ¶ 10.

"To establish a First Amendment retaliation claim, a plaintiff must show (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (citation and internal quotation marks omitted).

Protected speech or activity includes, for example, filing a lawsuit, an administrative complaint, or a prison grievance*.  See id.* ("The filing of prison grievances is a protected activity."); *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) ("[I]t is well established that retaliation against a prisoner for pursuing a grievance violates the right to petition [the] government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983." (internal quotation marks and citations omitted)); *Booth v. Comm'r of Corr.*, No. 19 Civ. 100 (MPS), 2019 WL 919580, at *5 (D. Conn. Feb. 25, 2019) ("Filing complaints and grievances is protected

activity.") (citation omitted).  Although not all oral speech by an inmate constitutes protected activity, some courts in the Second Circuit have determined that verbal or oral complaints about the conduct of prison officials or conditions of confinement may constitute protected speech in the context of a First Amendment retaliation claim.  *See, e.g.*, *McIntosh v. United States*, No. 14 Civ. 7889 (KMK), 2016 WL 1274585, at *26 (S.D.N.Y. Mar. 31, 2016) (collecting cases).

"An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Brandon*, 938 F.3d at 40 (quoting *Davis*, 320 F.3d at 353).  In order to allege causation, the inmate must state facts "suggesting that the protected conduct was a substantial or motivating factor in the [defendant's] decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)).  "Some of the facts often used to determine retaliatory motive may include (1) temporal proximity between the protected conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record, (3) a finding of not guilty at the disciplinary hearing, and (4) statements by the officials showing motivation." *Ramos v. Semple*, No. 18 Civ. 1459 (VAB), 2019 WL 2422875, at *2 (D. Conn. June 10, 2019).

Courts treat prisoner retaliation claims "with skepticism and particular care, because virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (citation omitted). Consequently, the Second Circuit has required that prisoner retaliation claims "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan*, 794 F.3d at 295 (internal quotations and citation omitted).

These principles were exemplified in *Alston v. Chapdelaine*, No. 15 Civ. 434 (CSH), 2016 WL 543105 (D. Conn. Feb. 10, 2016), which similarly reviewed a prisoner's complaint pursuant to 28 U.S.C. § 1915A.  In that case, I observed that "a false misbehavior report may violate the Constitution when it is filed in retaliation against a prisoner for exercising a constitutional right." *Id.* at *6 (citation omitted).  I then concluded that the plaintiff stated a plausible claim for relief under section 1983 based on the prison officials' wrongful accusations regarding the plaintiff.  *Id.* at *7. I noted that the officials falsely accused plaintiff of instigating a prison security incident for the purpose of transferring him to the administrative segregation unit.  *See id.*  Crucially for purposes of the claim, plaintiff had alleged that the defendants fabricated the misbehavior report in retaliation for plaintiff's previous *participation in constitutionally protected activity* under the First Amendment: the plaintiff had lodged complaints with prison officials regarding their abuse of inmates.  *See id.*

In the case at bar, Plaintiff alleges that Correction Officer Parsons issued the allegedly false disciplinary report to retaliate against him for the many past "issues" between them.  Doc. 1 ¶ 10. However, Plaintiff has not elaborated upon how his past history with Correction Officer Parsons motivated Parsons to file the allegedly retaliatory, false disciplinary report.  Nor has Plaintiff provided any allegations suggesting that he engaged in protected speech or activity to give rise to a claim of First Amendment retaliation, or any other constitutionally-protected activity, for that matter.

Although the Court must construe Plaintiff's Complaint liberally, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted).

Likewise, although the Court must "draw the most favorable inferences that [a *pro se* plaintiff's] complaint supports," a court "cannot invent factual allegations that [the plaintiff] has not pled." *Id.*

In this case, Plaintiff has failed to adequately allege that Parsons issued the disciplinary report in retaliation for exercising a constitutionally protected right.  Accordingly, the Court concludes that Plaintiff has failed to state a plausible retaliation claim based on the allegedly-fabricated misbehavior report.  *See* 28 U.S.C. 1915A(b)(1); *see also Abrams v. Erfe*, No. 17 Civ. 1570 (CSH), 2018 WL 691714, at *13 (D. Conn. Feb. 2, 2018) (dismissing the plaintiff's false disciplinary report claim because the plaintiff had "failed to adequately allege that the report was issued in retaliation for exercising a constitutionally protected right").

However, the Court will permit Plaintiff to file an amended complaint to replead his retaliation claim to include allegations that he participated in constitutionally protected activity and that there was a causal connection between the protected activity and an adverse action.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, the Court concludes that Plaintiff has failed to state plausible claims that Defendants violated his First Amendment and Fourteenth Amendment rights under the United States Constitution.

If Plaintiff believes he can allege facts to cure the deficiencies identified in this Ruling, he may file an amended complaint within **thirty (30) days** from the date of this Order.  Failure to file an amended complaint within that time frame will result in dismissal of this action.

14

It is SO ORDERED.

Dated: April 27, 2020
         New Haven, Connecticut

                                        */s/ Charles S. Haight, Jr.*
                                        CHARLES S. HAIGHT, JR.
                                        Senior United States District Judge

15