# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

CHRISTOPHER SHAND,

       Plaintiff,

    v.

CORRECTION OFFICER PARSONS,
CORRECTION OFFICER SMILEY,
CORRECTION OFFICER VARGAS,
LIEUTENANT BETANCES, AND
ACTING DISTRICT ADMINISTRATOR
GIULIANA MUDANO,

       Defendants.

Case No. 3:20-cv-28 (CSH)

**JULY 28, 2022**

## <u>INITIAL REVIEW ORDER</u>

**HAIGHT, Senior District Judge:**

Christopher Shand ("Plaintiff") is a former sentenced inmate[1] previously incarcerated at the MacDougall-Walker Correctional Institution ("MacDougall") and Northern Correctional Institution ("Northern") of the Connecticut Department of Correction ("DOC"). In January 2020, he filed a complaint pro se pursuant to 42 U.S.C. § 1983 ("§ 1983") against Northern Correction Officers Parsons and Smiley and Lieutenant Betances in their individual capacities, and Acting

---

[1]According to DOC's inmate database, on January 7, 2015, Plaintiff received an eight-year sentence. Plaintiff is no longer listed in DOC's inmate database. CONNECTICUT STATE DEPARTMENT OF CORRECTION OFFENDER INFORMATION SEARCH, http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num =400912 (last accessed before February 25, 2021). *See also Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (the court may "take judicial notice of relevant matters of public record."). Plaintiff informed the Court on July 14, 2021 that he had been transferred to Corrigan-Radgowski Correctional Center; on December 8, 2021, that he had been transferred back to MacDougall; and most recently, on December 29, 2021, that he was now living at a private, non-DOC address in Connecticut. Notices of Change of Address, ECF Nos. 22, 24–25.

District Administrator Giuliana Mudano in her official and individual capacities. Compl. ¶¶ 2–7, ECF No. 1. Plaintiff alleged that those defendants violated his constitutional rights and seeks monetary damages and injunctive relief. *See id.* ¶¶ 14–16.

Pursuant to 28 U.S.C. § 1915A, the Court conducted an initial review of Plaintiff's complaint and determined that he had failed to state any plausible claim that the named defendants violated his First and Fourteenth Amendment rights under the United States Constitution. Initial Review Order 14, ECF No. 7, *available at Shand v. Parsons*, No. 3:20-cv-28 (CSH), 2020 WL 1989151, at *8 (D. Conn. Apr. 27, 2020). The Court permitted Plaintiff to file an amended complaint to cure the deficiencies identified in the Court's initial review order. *Id.*

After four extensions of time, Plaintiff filed an amended complaint against Correction Officer Parsons, Correction Officer Vargas, Correction Officer Smiley, Lieutenant Betances, and Acting District Administrator Giuliana Mudano (collectively, "Defendants"), in their individual and official capacities. *See generally* Am. Compl., ECF No. 17. In accordance with 28 U.S.C. § 1915A, the Court now conducts its initial review of Plaintiff's amended complaint to determine whether his § 1983 claims may proceed.

## I. STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b)(1)–(2); *Abrams v. Waters*, No. 3:17-CV-1659 (CSH), 2018 WL 2926294, at *3 (D. Conn. June 8, 2018).

A complaint is adequately pled if its allegations, accepted as true and liberally construed, could "conceivably give rise to a viable claim." *See Green v. Martin*, 224 F. Supp. 3d 154, 160 (D.

Conn. 2016) (citing *Phillips v. Girdich*, 408 F.3d 124, 130 (2d Cir. 2005)). Although highly detailed allegations are not required, the complaint must state a claim that is "plausible on its face." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *Allco Fin. Ltd. v. Klee*, 861 F.3d 82, 94 (2d Cir. 2017). A complaint states a claim that is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. However, the Court is not bound to accept "conclusory allegations." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Nor does a complaint suffice if it tenders "naked assertions" devoid of "further factual enhancement." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557).

If a plaintiff is proceeding pro se, it is well established that his or her complaint "must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 Fed. Appx. 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam)); *see also Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) ("[A] pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers."). Nevertheless, even when reviewing a pro se complaint, a court may not "invent factual allegations" that the plaintiff has not pleaded. *See Chavis v. Chappius*, 618 F.3d 162, 170 (2d 2010). A pro se complaint that contains "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," is not sufficient to state a viable claim. *Id.* (citation and internal quotation marks omitted).

## II. FACTUAL ALLEGATIONS

The following factual allegations in Plaintiff's amended complaint are accepted as true only for purposes of this order.

Plaintiff has had what he describes as "many personal issues" with Correction Officers Parsons and Vargas. Am. Compl. ¶¶ 10. He has filed inmate requests and grievances about their tampering with his food trays and ripping up and throwing away his personal property. *Id.* ¶¶ 22, 25. Plaintiff has also filed a grievance against Correction Officer Smiley for withholding legal documents in an attempt to hinder Plaintiff's ability to file an appeal. *Id.* ¶ 26.

On January 6, 2019, Correction Officer Parsons threatened and verbally harassed Plaintiff before escorting him to the South Day Room for a social phone call. *Id.* ¶¶ 10–11. During the escort, Parsons called Plaintiff a snitch, rapist, and child molester and threatened to "F— him up." *Id.* ¶ 11. As Plaintiff exited the Day Room, Parsons told Plaintiff to "write it up[,]" since Plaintiff likes to make complaints and file grievances, and then called Plaintiff "babygirl." *Id.* ¶ 12.

While Plaintiff was returning to his cell, Parsons continued with his threats and attempts to antagonize Plaintiff. *Id.* ¶ 13. Plaintiff made no response to Parsons nor did he resist or pull away from Parsons. *Id.*

According to Plaintiff, Parsons removed Plaintiff's handcuffs and collar without any issues, but Plaintiff heard Officer Vargas yell out for Plaintiff to pick up his property as he was going to segregation. *Id.* ¶ 14. Thereafter, Lieutenant Tuttle and a group of other officers appeared at Plaintiff's door and told him to cuff up. *Id.* ¶ 15. Plaintiff was informed that he was being placed on Restricted Housing Status pending an investigation into whether Plaintiff broke a handcuff key during this incident. *Id.*

Plaintiff alleges that Defendants Parsons and Vargas conspired to fabricate the report that Plaintiff pulled away through the food slot while having his handcuffs removed. *Id.* ¶¶ 16, 23. Parsons maintained that the handcuff key broke as a result of Plaintiff's pulling action. *Id.* ¶ 17. Plaintiff was issued a disciplinary report for this alleged conduct. *Id.* ¶ 20.

Plaintiff was placed in segregation that same day. *Id.* ¶ 29. He was never served with a disciplinary report on the charges of interfering with safety and security. *Id.* ¶ 30. Ahead of his disciplinary hearing, he requested that Hearing Officer Betances and Investigator Smiley call inmates who had witnessed the incident on January 6, 2019. *Id.* ¶ 31. Although Plaintiff did not know the names of these inmates, he provided their cell locations. *Id.* ¶ 32. He also asked that Correction Officers Porter and Swaby, who had witnessed the incident, be called as witnesses. *Id.* ¶ 33. Investigator Smiley "refuse[d] to see" the inmates and correction officers whom Plaintiff had identified as witnesses. *Id.* ¶ 34.

At the disciplinary hearing on January 16, 2019, Hearing Officer Betances failed to call any of the witnesses requested by Plaintiff. *Id.* ¶¶ 35, 36. Betances stated that he would not call witnesses to a hearing involving a segregation inmate and that the staff report provided "a full picture of the incident." *Id.* ¶ 36.

During the hearing, Hearing Officer Betances also failed to produce any photograph of the broken key, claiming that no photograph existed. *Id.* ¶ 37. Rather, Betances maintained that the incident reports drafted by Officer Hafner indicated that the broken key had been put in for replacement and that this report was sufficient. *Id.*

After the hearing, Plaintiff received Betances's written disposition finding him guilty based on staff statements and documentation and sanctioning him with fifteen days of punitive

segregation. *Id.* ¶ 38. The staff statements did not provide any facts showing how staff got the cuffs and cuff key back or how staff took off Plaintiff's collar restraint. *Id.* ¶ 40.

Plaintiff filed an administrative appeal with Acting District Administrator Mudano consistent with the prison administrative procedures. *Id.* ¶ 42. His administrative appeal complained that his requested witnesses had not been called; that no evidence supported the offense of interfering with safety or security; that there was no photo of the broken key; and that the written disposition did not explain the reason for the finding of guilt. *Id.* Mudano denied the appeal. *Id.* ¶ 43.

According to Plaintiff, video footage does not corroborate Correction Officer Parsons's representations about Plaintiff's conduct. *Id.* ¶¶ 18, 24. Plaintiff alleges that Parsons fabricated the charges and broke the key himself—in violation of DOC employee conduct policies—in order to harass and retaliate against Plaintiff. *Id.* ¶ 19, 21.

Defendants Smiley, Betances, and Mudano kept Plaintiff in punitive segregation despite knowing that the evidence was insufficient to support the charges and that Parsons and Vargas had conspired against Plaintiff at Northern. *Id.* ¶ 44. During his punitive segregation, Plaintiff was confined in a small cell for twenty-three to twenty-four hours a day;[2] was forced to eat all of his meals in his cell; was released from his cell for recreation for only one hour per day; was required to shower with leg irons and allowed only three showers per week; was placed in full restraints whenever he was removed from his cell; was prohibited from having non-legal contact visits; had no non-privileged phone calls or mail; and was precluded from work assignments and participation in congregate programming. *Id.* ¶ 47. The punitive segregation cells contained only a mattress,

---

[2] Plaintiff notes that DOC employs some forms of punitive segregation that involve extended periods of solitary confinement. *Id.* ¶ 44. However, Plaintiff does not affirmatively indicate that his punitive segregation involved an extended period of solitary confinement.

sheets, blanket, and pillow. *Id.* ¶ 48. All other items were forbidden. *Id.* Sometimes the officers shut off the inmates' water, and if an inmate needed to request water or other articles essential to personal hygiene, correction officers would respond only to inmates whom they liked.[3] *Id.*

Compared to Plaintiff's punitive segregation, the restrictive housing for the Chronic Discipline, Protective Custody, and Security Risk Groups has more privileges, similar to those of the general population, such as visits, congregate programming, telephone calls, mail, soap, toilet paper, and "all the basic human needs[.]" *Id.* ¶ 50.

Plaintiff also alleges that Defendants have violated the Administrative Directive 2.14 concerning employee conduct.[4] *Id.* ¶ 28.

### III. DISCUSSION

Plaintiff's amended complaint alleges a violation of his Fourteenth Amendment rights based on his allegation that he was found guilty on false charges and without due process. Plaintiff's allegations also indicate that he asserts First Amendment retaliation claims against Correction Officers Parsons, Vargas, and Smiley.

Falsely accusing an inmate of misconduct does not, itself, violate the Constitution. *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997). In fact, "a prison inmate has no general constitutional right to be free from being falsely accused in a misbehavior report." *Id.* (citing *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986)). As explained on prior initial review of Plaintiff's claims in this matter, Plaintiff has raised the "two exceptions to this rule: when an inmate is

---

[3] Parts of this handwritten Complaint, including this allegation, are difficult to discern.

[4] A defendant's failure to comply with prison regulations or administrative directives does not constitute a basis for relief under § 1983 because "a prison official's violation of a prison regulation or policy does not establish that the official has violated the Constitution or is liable to a prisoner under 42 U.S.C. § 1983." *Fine v. UConn Med.*, No. 3:18-CV-530 (JAM), 2019 WL 236726, at *9 (D. Conn. Jan. 16, 2019).

able to show either (1) that he was disciplined without adequate due process as a result of the report; or (2) that the disciplinary report was issued in retaliation for exercising a constitutionally protected right." *Willey v. Kirkpatrick*, 801 F.3d 51, 63 (2d Cir. 2015) (citation and internal quotation marks omitted). *See also Shand*, 2020 WL 1989151, at *3; *Velez v. Burge*, 483 F. App'x 626, 628 (2d Cir. 2012) ("[An] inmate must show something more, such as that he was deprived of due process during the resulting disciplinary hearing, or that the misbehavior report was filed in retaliation for the inmate's exercise of his constitutional rights.").

### A. Lack of Due Process

Plaintiff claims that following Parsons's and Vargas's fabrication of charges against him, his procedural due process rights were violated when he was placed in segregation without notice of the disciplinary charges and later when he was found guilty and received the sanction of punitive segregation without a fair hearing. Am. Compl. ¶¶ 29–43. Plaintiff alleges that (1) he was never served with the disciplinary report, *id.* ¶ 29; (2) Investigator Smiley refused to question the witnesses identified by Plaintiff as relevant to the events on January 6, 2020, *id.* ¶ 34; (3) Hearing Officer Betances failed to call any of Plaintiff's witnesses at Plaintiff's hearing, *id.* ¶ 36; (4) Hearing Officer Betances failed to produce photographs of the physical evidence at the hearing, *id.* ¶ 37; and (5) Plaintiff failed to receive a procedurally adequate written disposition as Betances's written disposition was supported only by staff statements, which did not establish facts supporting Plaintiff's guilt, *id.* ¶¶ 39–41. Plaintiff alleges further that Mudano denied his administrative appeal complaining about his finding of guilt without adequate due process. *Id.* ¶ 42.

The Court repeats herein the relevant Fourteenth Amendment due process standards from its prior initial review order. 2020 WL 1989151 at *4. The standard analysis for a procedural due process claim "proceeds in two steps: a court first ask[s] whether there exists a liberty or property

interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (per curiam).

In the prison context, which involves persons whose liberty interests have already been severely restricted because of their confinement in a prison, a prisoner plaintiff cannot show a cognizable deprivation of "liberty" unless the plaintiff can show that he or she was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). The Second Circuit has also explained that courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Davis v. Barrett*, 576 F.3d 129, 133–34 (2d Cir. 2009) (per curiam); *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

In *Sandin*, the prisoner brought a § 1983 action against several prison officials alleging that they had violated his constitutional right to procedural due process by sentencing him to disciplinary segregation without permitting him to call certain witnesses. *See Sandin*, 515 U.S. at 476. The Supreme Court rejected the contention that any action taken by correctional officials as a punitive measure necessarily encroaches upon a liberty interest protected under the Due Process Clause. *See id.* at 484. Moreover, as to time limits for disciplinary confinement, the Supreme Court held that a prisoner who was subjected to a disciplinary term of thirty days of confinement in restrictive housing did not sustain a deprivation of a liberty interest in violation of the Fourteenth Amendment's Due Process Clause. *See id.* Given the prisoner's indeterminate sentence of 30 years to life, his confinement in disciplinary segregation for 30 days "did not exceed similar, but totally discretionary confinement in either duration or degree of restriction." *Id.* at 486. The Supreme Court concluded that such confinement did not constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" inasmuch as "[t]he regime to which

[the prisoner] was subjected . . . was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id.* at 484, 486–87.

With *Sandin*'s guidance in mind, I have previously addressed whether prisoners have alleged a cognizable deprivation of "liberty"—that is, whether they have plausibly alleged that they experienced an "atypical and significant hardship." Toward one end of the spectrum, I explained that:

> [A] twenty-day confinement in segregation, falling well short of thirty days, does not, in and of itself, constitute a sufficient deprivation of liberty subject to due process protection. This twenty-day restriction imposes no "atypical and significant hardship" in relation to the fifty-one (51) year term of imprisonment to which [the plaintiff] was sentenced for attempted murder, assault, and criminal possession of a firearm.

*Abrams*, 2018 WL 691717, at *12.

On the other hand, where a plaintiff alleged that he was placed in administrative segregation for a much longer period of time, I held in an initial review order that:

> Plaintiff's Complaint shows that he was committed to Administrative Segregation for more than 101 days. "Such a period of segregated confinement would ordinarily preclude dismissing a claim without fact-finding." [*Ellerbe v. Jason*, No. 12 Civ. 580 (MPS), 2015 WL 1064739, at *5 (D. Conn. Mar. 11, 2015).] Plaintiff may therefore meet the first *Sandin* requirement of a deprivation of a liberty interest imposing an atypical and significant hardship; and, further factfinding is needed.

*Campbell v. Lantz*, No. 19 Civ. 1512 (CSH), 2019 WL 6771417, at *8 (D. Conn. Dec. 12, 2019) (modification in *Campbell*).

Turning to the case at bar, Plaintiff has alleged that he was placed in punitive segregation for fifteen days as a result of the hearing determination finding him guilty, and that he failed to receive adequate procedural protections in connection with his disciplinary hearing. Doc. 17 at ¶ 38.

According to the DOC website, Plaintiff was sentenced to eight years of incarceration. Thus, his fifteen days of segregation—a relatively short period in relation to his eight years of imprisonment—fails on its own to raise an inference of atypicality. *See Davis,* 576 F.3d at 133; *McLellan v. Chapdelaine*, 2017 WL 388804, at *4 (D. Conn. Jan. 27, 2017) (citing cases for that proposition); *see also Colon v. Howard*, 215 F.3d 227, 231 (2d Cir. 2000) ("The duration of [segregated] confinement is a distinct factor bearing on atypicality and must be carefully considered.").

However, the conditions of a prisoner's housing may independently give rise to an inference of atypicality, even if the time spent in that housing does not. The Second Circuit has "affirmed dismissal of due process claims only in cases where the period of time spent in [restrictive housing] was exceedingly short—less that the 30 days that the *Sandin* plaintiff spent in [restrictive housing]—*and* there was no indication that the plaintiff endured unusual [restrictive housing] conditions." *Palmer*, 364 F.3d at 65–66 (citing cases) (emphasis added). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) (internal quotations and citation omitted).

In his amended complaint, Plaintiff has alleged facts indicating that the punitive segregation conditions were both harsh and differed from those of the general population: he was placed in a small cell with only a mattress, blankets, and pillow; was permitted to eat his meals only in his cell; was afforded only one hour of recreation outside of his cell per day and was placed in full restraints whenever removed from his cell; had limited opportunity to shower and was required to wear leg irons in the shower; had no nonprivileged telephone calls or mail; had no social visits or access to commissary, employment, or congregate programs; and had difficulty procuring from

11

the correctional staff essential personal hygiene items such as running water, toilet paper, and soap. Am. Compl. ¶¶ 47–48. He has also alleged that other restrictive status confinements did not limit the inmates' access to programs, telephone calls, mail, showers, and items such as soap and toilet paper. *Id.* ¶ 50.

Plaintiff's fifteen days in segregated housing were relatively brief. *Cf. Colon v. Howard*, 215 F.3d 227, 231–32, 232 n.5 (2d Cir. 2000) (noting that periods of 101 to 305 days are those in which "development of a detailed record will assist appellate review[,]" but not "exclud[ing] the possibility that [segregated] confinement of less than 101 days could be shown on a record more fully developed . . . to constitute an atypical and severe hardship"). However, Plaintiff's allegations raise a plausible inference that his conditions were more onerous than usual with respect to basic human needs such as running water, toilet paper, and access to personal hygiene items.[5] In *Ortiz v. McBride*, the Second Circuit stated that a claim concerning a ninety-day period in segregated housing "is by no means frivolous" when the plaintiff "alleges that he was subjected to unusually harsh conditions" during that period, and emphasized that "[t]he conditions of confinement are a distinct and equally important consideration in determining whether a confinement in [segregated housing] rises to the level of 'atypical and severe hardship' as required by *Sandin*." *Ortiz v. McBride*, 323 F.3d 191, 195 (2d Cir. 2003). Therefore, at this preliminary stage in the matter, Plaintiff's amended allegations are sufficient to suggest that he has a plausible liberty interest at stake due to the "atypical and significant hardship" of his punitive segregation because, accepted as true and liberally construed, his amended allegations could "conceivably give rise to a viable claim." *Green*, 224 F. Supp. 3d at 160 (citation omitted).

---

[5] As the Second Circuit stated in *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000): "It may be that discovery will reveal that such conditions were not imposed or that they were not atypical; but we cannot say that the complaint itself shows that [the plaintiff] can prove no set of facts that would entitle him to relief."

The Court must next consider whether Plaintiff was afforded due process in the deprivation of his liberty interest. In evaluating the process accorded in prison disciplinary and administrative decisions, the Court is mindful of "the deference we owe prison officials in carrying out their daily tasks." *Proctor v. LeClaire*, 846 F.3d 597, 608 (2d Cir. 2017) (citing *Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979)). The procedural protections required under Fourteenth Amendment due process depend upon the context of the proceeding. *See Bolden v. Alston*, 810 F.2d 353, 357 (2d Cir. 1987).

In an administrative proceeding, the inmate is entitled only to "some notice of the charges against him and an opportunity to present his views [either orally or in writing] to the prison official charged with deciding" the matter. *Hewitt v. Helms*, 459 U.S. 460, 476 (1983). In a disciplinary proceeding, more specifically, "an inmate is entitled to advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–67 (1974)). Further, "due process requires that there be some evidence to support the findings made in the disciplinary hearing." *Zavaro v. Coughlin*, 970 F.2d 1148, 1152 (2d Cir. 1992) (quoting *Superintendent v. Hill*, 472 U.S. 445, 455 (1985)) (cleaned up). The Second Circuit has explained that a disciplinary determination must be supported by some "reliable evidence" of guilt. *Elder v. McCarthy*, 967 F.3d 113, 129 (2d Cir. 2020) (quoting *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004)). "Due process does not permit a hearing officer simply to ratify the bald conclusions of others; it requires some inquiry to determine whether the totality of facts and circumstances reasonably supports the proffered conclusion." *Sira*, 380 F.3d at 80.

The right of a prisoner to call witnesses at a disciplinary hearing is limited. The Supreme

Court laid out the general standard in *Wolff v. McDonald*, 418 U.S. 539, 566 (1974):

> We are also of the opinion that the inmate facing disciplinary proceedings should
> be allowed to call witnesses and present documentary evidence in his defense when
> permitting him to do so will not be unduly hazardous to institutional safety or cor-
> rectional goals. Ordinarily, the right to present evidence is basic to a fair hearing;
> but the unrestricted right to call witnesses from the prison population carries obvi-
> ous potential for disruption and for interference with the swift punishment that in
> individual cases may be essential to carrying out the correctional program of the
> institution. We should not be too ready to exercise oversight and put aside the judg-
> ment of prison administrators. . . . Prison officials must have the necessary discre-
> tion to keep the hearing within reasonable limits and to refuse to call witnesses that
> may create a risk of reprisal or undermine authority, as well as to limit access to
> other inmates to collect statements or to compile other documentary evidence.

*Id.* While correctional officials must present some explanation for their failure to call a witness,

this may occur "either at the time of the disciplinary hearing or subsequently in court, and perhaps

only *in camera* in the latter instance." *Russell v. Selsky*, 35 F.3d 55, 57 (2d Cir. 1994) (citing *Ponte

v. Real*, 471 U.S. 491, 499 (1985)).

Plaintiff's allegations suggest that he was not afforded the required notice and opportunity

to present his views in accordance with due process prior to his initial placement in segregation

pending the hearing on the charges against him. Namely, Plaintiff alleges that he "was never served

with a disciplinary report for interfering with safety or security[.]" *See* Am. Compl. ¶ 30. Taken

as true, this allegation states a claim that Plaintiff lacked the "advance written notice of the charges

against him" required by *Sira*. 380 F.3d at 69.

Additionally, Plaintiff's allegations suggest that he was found guilty and received the sanc-

tion of punitive segregation after an inadequate investigation by Investigator Smiley and a hearing

in which Hearing Officer Betances based his conclusion solely on staff reports. *Id.* ¶¶ 34–41. While

Plaintiff had no "unrestricted right to call witnesses" at his hearing, he did have a limited right "to

call witnesses and present documentary evidence in his defense [if] permitting him to do so

14

[would] not be unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 566. Plaintiff's allegation that he was unable to call a single witness suffices to state a due process claim, to which Defendants may respond by providing some explanation for their actions, as envisioned by *Russell*, 35 F.3d at 57. There is also no indication that Plaintiff was provided with assistance in preparing for the hearing, although he may have been so entitled as an individual in restrictive housing. *Eng v. Coughlin*, 858 F.2d 889, 897 (2d Cir. 1988) (citing *Wolff*, 418 U.S. at 570).

Accordingly, the Court will permit Plaintiff's Fourteenth Amendment claims to proceed based on failure to afford adequate due process in connection with his initial placement in segregation and his punitive segregation as a result of his guilty finding on the disciplinary charges. The Court will permit Plaintiff's due process claims to proceed against all of the Defendants, each of whom is alleged to have had some personal involvement with the procedural due process violation.[6]

### B. First Amendment Retaliation

Plaintiff's amended complaint asserts that Officers Parsons and Vargas conspired to issue the allegedly false disciplinary report to retaliate against him. Am. Compl. ¶ 23. Plaintiff alleges

---

[6] "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). The Second Circuit has defined "personal involvement" to mean direct participation, such as "personal participation by one who has knowledge of the facts that rendered the conduct illegal," or indirect participation, such as "ordering or helping others to do the unlawful acts." *Provost v. City of Newburgh*, 262 F.3d 146, 155 (2d Cir. 2001) (citation omitted). To "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020). For purposes of this initial review, the Court considers Plaintiff's allegations that Mudano failed to take steps to remedy his punitive segregation after reviewing his administrative appeal as sufficient to raise an inference that Mudano had direct personal involvement in the due process violation.

that he has had "ongoing issue[s]" with both Parsons and Vargas (for instance, Parsons's calling Plaintiff names and threatening him without provocation on January 6, 2020), and that Plaintiff has filed inmate requests and grievances about their tampering with his food trays and ripping up and throwing away his personal property. *Id.* ¶¶ 11, 22, 25. Plaintiff has also alleged that he filed a prior grievance against Correction Officer Smiley about Smiley's conduct in attempting to prevent him from filing an appeal, and, as mentioned above, that Smiley failed to investigate the witnesses he identified as relevant to the allegedly false charges. *Id.* ¶¶ 26, 34. Thus, the Court next addresses whether Plaintiff has stated any plausible claim or claims of First Amendment retaliation.

"To prevail on a First Amendment retaliation claim, a plaintiff must establish (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019).

Protected speech or activity includes, for example, filing a lawsuit, an administrative complaint, or a prison grievance. *See id.* ("The filing of prison grievances is protected activity"); *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) ("It is well established that retaliation against a prisoner for pursuing a grievance violates the right to petition [the] government for the redress of grievances guaranteed by the First and Fourteenth Amendments and is actionable under § 1983.") (internal quotation marks and citations omitted); *Booth v. Comm'r of Corr.*, No. 19-CV-100 (MPS), 2019 WL 919580, at *5 (D. Conn. Feb. 25, 2019) ("Filing complaints and grievances is protected activity.") (citation omitted). Although not all oral speech by an inmate constitutes protected activity, some courts within the Second Circuit have determined that oral complaints about the conduct of prison officials or conditions of confinement may constitute protected speech in the

context of a First Amendment retaliation claim. *See McIntosh v. United States,* No. 14-CV-7889 (KMK), 2016 WL 1274585, at *26 (S.D.N.Y. Mar. 31, 2016) (collecting cases).

"An adverse action is defined as 'retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.'" *Brandon*, 938 F.3d at 40 (quoting *Davis*, 320 F.3d at 353). In order to allege causation, the inmate must state facts "suggesting that the protected conduct was a substantial or motivating factor in the [defend-ant's] decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)). "Some of the facts often used to determine retaliatory motive may include (1) temporal proximity between the pro-tected conduct and the alleged retaliatory act, (2) the prisoner's prior good disciplinary record, (3) a finding of not guilty at the disciplinary hearing, and (4) statements by the officials showing mo-tivation." *Ramos v. Semple*, No. 3:18-CV-1459 (VAB), 2019 WL 2422875, at *2 (D. Conn. June 10, 2019).

Courts treat prisoner retaliation claims "with skepticism and particular care, because virtu-ally any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally pro-scribed retaliatory act." *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (citation omitted). Consequently, the Second Circuit has required that prisoner retaliation claims "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan*, 794 F.3d at 295 (internal quotations and citation omitted).

As I explained in my initial review of Plaintiff's prior retaliation claims, a plaintiff may allege a plausible First Amendment claim based on allegations that a defendant fabricated a mis-behavior report in retaliation for his or her complaints about prison officials' abuse of inmates.

2020 WL 1989151, at *7 (citing *Alston v. Chapdelaine*, No. 3:15-CV-434 (CSH), 2016 WL 543105, *6–7 (D. Conn. Feb. 10, 2016)). Plaintiff alleges that Correction Officers Parsons and Vargas fabricated the false disciplinary report to retaliate against him because there were "ongoing issue[s]" between them. Am. Compl. ¶¶ 11, 22. In my initial review of Plaintiff's prior retaliation claims, I held that this allegation, alone, failed to state a plausible claim for relief. 2020 WL 1989151, at *7.

Now, Plaintiff has added the critical allegation that he repeatedly informed prison officials about misconduct by Parsons and Vargas. *Id.* ¶ 25. In particular, he informed other officials that Parsons and Vargas had mishandled his inmate request forms and grievances, tampered with his food trays, and ripped up and thrown away his personal property. *Id.* These complaints about Parsons and Vargas—who allegedly fabricated the disciplinary charge against Plaintiff—constitute protected speech or activity. Likewise, Plaintiff has also alleged that he filed a grievance against Officer Smiley, who later refused to contact the witnesses Plaintiff identified as having relevant information about the allegedly false charges. *Id.* ¶ 26. Although it is unclear whether the alleged adverse actions closely followed Plaintiff's protected conduct, the allegations are sufficient to raise a plausible inference that Defendants likely had awareness of Plaintiff's complaints made directly against them, and that they took adverse action against Plaintiff that would deter a similarly situated inmate from exercising his constitutional rights. *See id.* ¶ 12 (Parsons allegedly noted that Plaintiff "like[d] to make complaints and file[] grievances and lawsuit[s]"). Accordingly, the Court will allow Plaintiff's First Amendment retaliation claims to proceed against Parsons, Vargas, and Smiley.[7]

---

[7] Plaintiff's "wholly conclusory" allegation that Betances and Mudano were aware that Parsons and Vargas had fabricated the charges, Am. Compl. ¶ 44, is insufficient to establish a First Amendment

### C. Claims for Relief

In his request for relief, Plaintiff seeks damages from Defendants in their individual and official capacities, a declaratory judgment, and an injunction. Doc. 7 at 9. Plaintiff's claims for money damages against Defendants in their individual capacities may proceed, to the extent that those claims state a plausible claim for relief, but in seeking other forms of relief he faces the dual impediments of Eleventh Amendment immunity and his own release from custody.

In *Ex parte Young*, 209 U.S. 123, 155–56 (1908), the United States Supreme Court recognized a limited exception to the Eleventh Amendment's grant of sovereign immunity to permit a plaintiff to sue a state official acting in an official capacity for prospective injunctive relief for continuing violations of federal law. *See also In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 371 (2d Cir. 2005) ("[S]overeign immunity d[oes] not bar actions seeking only prospective injunctive relief against state officials to prevent a continuing violation of federal law because a state does not have the power to shield its officials by granting them immunity from responsibility to the supreme authority of the United States.") (citation and internal quotation marks omitted); *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) ("A plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law.") Thus, the Court considers whether Plaintiff's requests for relief against Defendants in their official capacities are plausible and within this Court's jurisdiction.

---

retaliation claim because Plaintiff has not stated any "specific and detailed factual allegations" to establish their direct personal involvement in a First Amendment violation. *Dolan*, 794 F.3d at 295.

### *1. Damages against Defendants in their Official Capacities*

Any claims for money damages against Defendants, who are state employees, in their official capacities are barred by the Eleventh Amendment. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). "That is so because a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents . . . ." *Id.* (citation and internal quotation marks omitted). Accordingly, to the extent that Plaintiff asserts claims for money damages against the Defendants in their official capacities, the claims will be dismissed as outside the Court's jurisdiction.

### *2. Request for Declaratory Judgment*

Plaintiff seeks a declaratory judgment that Defendants violated his First Amendment rights. However, a declaratory judgment that Plaintiff's First Amendment rights were violated in the past is barred by the Eleventh Amendment. *See P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit judgments against state officers declaring that they violated federal law in the past"); *Green v. Mansour*, 474 U.S. 64, 68 (1985) ("We have refused to extend the reasoning of *Young* . . . to claims for retrospective relief.") (citations omitted).[8] Accordingly, the request for a declaratory judgment is dismissed as outside the Court's jurisdiction.

### *3. Request for Injunctive Relief*

Plaintiff seeks an injunction ordering the Defendants to expunge the disciplinary offense that was allegedly fabricated by Correction Officers Parsons and Vargas. Plaintiff has not alleged facts to show that he is subject to ongoing First Amendment or Fourteenth Amendment violations

---

[8] Furthermore, were Plaintiff to prevail on his First Amendment claims of retaliation, the Court necessarily would determine that his First Amendment rights had been violated. Thus, a separate award of declaratory relief is unnecessary.

due to Defendants' conduct. Nor has Plaintiff, who is no longer in a correctional facility, alleged that he is still subjected to punitive segregation as a result of the guilty finding on the allegedly retaliatory false disciplinary charges or that he has at present any contact with Northern Correction Officers Parsons or Vargas.

Plaintiff is no longer incarcerated. "In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). "However, there is an exception to the mootness doctrine for challenged actions that are 'capable of repetition, yet evading review.'" *Pugh v. Goord*, 571 F. Supp. 2d 477, 488 (S.D.N.Y. 2008) (citation omitted). "This exception will be applied . . . if '(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there [i]s a reasonable expectation that the same complaining party would be subjected to the same action again.' " *Id.* (quoting *Murphy v. Hunt*, 455 U.S. 478, 482 (1982)). Plaintiff has not alleged facts to satisfy this exception as, in light of his release from prison, the Court has no grounds to infer that he will be subjected to the same action again. Accordingly, the request for injunctive relief must be dismissed as not plausible.

## IV. CONCLUSION

For the foregoing reasons, the Court enters the following orders:

(1) The Court permits (a) Plaintiff's First Amendment retaliation claims for damages to proceed against Correction Officers Parsons, Vargas, and Smiley in their individual capacities, and (b) Plaintiff's Fourteenth Amendment due process claims for damages to proceed against Correction Officers Parsons, Vargas, and Smiley; Lieutenant Betances; and District Administrator Giuliana Mudano in their individual capacities. All other claims, including Plaintiff's requests for

damages against Defendants in their individual capacities, as well as for declaratory and injunctive relief, are DISMISSED.

(2) The clerk shall verify the current work addresses for Correction Officers Parsons, Vargas, and Smiley; Lieutenant Betances; and District Administrator Giuliana Mudano with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the amended complaint and this order to them at their confirmed addresses within **twenty-one (21) days** of this order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing.

If any Defendant fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service on that Defendant, and that Defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(3) The clerk shall send a courtesy copy of the amended complaint and this order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(4) Defendants shall file their response or responses to the amended complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If Defendants choose to file an answer or answers, Defendants shall admit or deny the allegations and respond to the cognizable claims recited above. Defendants may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26–37, shall be completed within **six months (180 days)** from the date of this order. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this order.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If Plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to put the new address on a letter without indicating that it is a new address. If Plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify Defendants or defense counsel of his new address.

(10) Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on Defendants' counsel by regular mail.

It is **SO ORDERED**.


Dated: July 28, 2022
New Haven, Connecticut

/s/ *Charles S. Haight, Jr.*
Charles S. Haight, Jr.
Senior United States District Judge